### WHITE *et al.* v. RUKES.

(*Circuit Court, D. Indiana.* February 23, 1889.)

WILLS—CONSTRUCTION—DESCRIPTION OF DEVISEE.

    Testator had many children, and devised real estate to several of them and their heirs, the will being unskillfully drawn. One devise of land was to "the heirs of H., [testator's son] by his paying $600 out of the rents and profits yearly arising out of the place." H. was named as one of the executors. At testator's death H. had one child, born out of wedlock, but which he and his wife treated as their child, and another child *in ventre sa mere*, and born a few weeks later. Three other children were born to H. afterwards. Before the will was executed, H. took possession of the land, and occupied it with testator's consent, and continued to occupy it for 22 years after testator's death, when he sold it. *Held*, that the devise should be construed as if it read "to H. and his heirs."

At Law.

Action by Winfield S. White and Serelda White against Harrison J. Rukes to recover land. Trial by the court.

*James A. Shackelford* and *William H. Dye*, for complainants.

*Harris & Calkins*, for defendant.

GRESHAM, J. John A. White died testate November 1, 1858, leaving a widow, and sons and daughters, namely, Henry, Polly, Malinda, James, Alexander, Amelia, Rebecca, Esther, and William. The entire estate was disposed of by the will, which was written by an unskilled, if not an illiterate, person. After directing the payment of his debts and funeral expenses, and making money bequests to Polly, Malinda,

James, and Alexander, the testator devised to Amelia and her heirs, Malinda and her heirs, Rebecca and her heirs, Esther and her heirs, and William and his heirs, specific real estate. The devise to Esther was charged with the maintenance of her mother, and the devises to the other children were charged with the payment of specific sums to the executors, to enable them to pay bequests, and otherwise carry out the provisions of the will. The sixth item of the will reads: "Also to the heirs of Henry White, 93 acres of land," (describing it) "by his paying six hundred dollars out of the rents and profits yearly arising from the place, as my executors may deem proper." The testator designated William Adams and Henry White as executors of his will and guardian of his minor children. Winfield S. White, the eldest child of Henry White, was born two years before his parents were married, and their next child Serelda, was born in wedlock, a few weeks after the testator's death. Although Winfield S. was born out of wedlock, he was recognized by Henry and his wife as their child, and as such became a member of their household. Three other children were born unto Henry and his wife. Some time before the death of the testator,—just how long the evidence fails to show,—Henry went into possession of the land described in the sixth item of the will, and with the knowledge and consent of the testator occupied and cultivated it, and continued in possession until August 13, 1880, when he conveyed it to Harrison J. Rukes, by deed of general warranty, in consideration of $2,300, which was paid by the grantee. Shortly after this conveyance Henry removed with his family to Missouri, where he died in 1881, and Winfield S. and Serelda, his two eldest children, then brought this action against Rukes to recover the land, claiming it as devisees under the item above quoted.

The plaintiffs insist that the words "heirs of Henry White" should be construed to mean "children of Henry White, born or begotten," thus excluding his three after-born children, and evincing an intention to disinherit Henry, notwithstanding the testator's confidence in him, manifested by making him one of the executors of the will, and, so far as the testator could, one of the guardians of the infant legatees and devisees. Wills are not so construed unless the language is clear and unambiguous. It cannot be doubted that the testator intended to devise the land to some one who should hold it "by his paying $600 out of the rents and profits yearly arising from the place." The pronoun "his" refers not to "heirs," but to the last antecedent,—Henry White,—who had occupied the land with the consent of the testator for some time before the will was executed. It is unreasonable to suppose that the testator intended to devise the land to all or part of Henry's children in such a way that the devise was liable to be defeated for the non-payment of an annual charge, and require or expect Henry to make such payments out of the rents and profits of the land, (only 93 acres,) although nothing was given to him. It appears from a fair construction of the sixth item, in connection with the other provisions of the will, that the testator intended to devise the land to Henry, charged with the payment of $600 a year, which, with the annual charges against the lands devised to the

other children, would enable the executors to satisfy the specific legacies. The person who was expected to occupy and cultivate the land and pay the annual charges was in the testator's mind as the devisee. If "children" is substituted for "heirs," it becomes necessary to go further and substitute "their" for "his." And if the testator intended to devise the land to Henry's children, and at the testator's death there had been no such children, the devise would have lapsed or failed for want of a dev‌isee. By transposing the words "heirs of Henry White" so as to read "Henry White and his heirs," (thus conforming to the language employed in making the other devises,) the words of the testator are preserved, all obscurity disappears, and the scheme of the will is upheld. When from the circumstances under which a will is made, the state of the property disposed of, the relation of the legatees, devisees, and others to it, and the general scheme of the instrument, the intention of the testator is manifest, it will be carried out, even to the extent of supplying and transposing words. Finding and judgment for the defendant.